DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant Cheryl K. Salmon ("Wife"), appeals from the decision of the Summit County Court of Common Pleas, Domestic Relations Division, which finalized her divorce from Appellee, Ernest J. Salmon ("Husband"). We reverse and remand.
 {¶ 2} Wife and Husband were married on August 18, 1979, in Akron, Ohio. They have one son, Matthew, who was emancipated at the time of the divorce. Wife filed an action for divorce on August 19, 2003, and Husband filed an answer and counterclaim for divorce on September 3, 2003. The matter proceeded to trial on September 15, 2004.
 {¶ 3} In the May 17, 2005, journal entry granting the divorce, the trial court also determined property distribution and support awards. The trial court noted that in January 1988, Husband received a personal injury settlement of $69,000 as a result of a car accident. He deposited these monies in his Akron Police Credit Union account. In October 1989, Husband received an inheritance in the amount of $10,678.38, which he also deposited into his credit union account. On October 20, 1989, Husband withdrew $27,000 from this account to purchase property intended for weekend use ("Woodfield property"). The home on the Woodfield property was unfinished at the time of purchase, and Husband and Wife completed the remaining work. The Woodfield property was subsequently sold for $42,000, and the proceeds were placed in a certificate of deposit ("CD"). The trial court found that Wife could not provide a dollar amount as to the amount of money spent on the work they completed on this property, and concluded there was no evidence presented that any marital money was expended on the Woodfield property. The trial court concluded that the entire proceeds from the sale of the Woodfield property constituted separate property, plus any passive appreciation thereon.
 {¶ 4} The remaining monies from Husband's injury settlement and inheritance remained in his credit union account or in CDs at Charter One Bank. Both CD accounts are joint and survivorship accounts. The first CD account lists Husband as the first joint account holder and Wife is listed as the second joint account holder. This account was opened on November 6, 1997, and had an opening balance of $10,000. The second CD account lists Wife as the first joint account holder and Husband as the second joint account holder. The date of issuance is June 4, 1998 and the opening balance was $24,227.16. Wife withdrew $17,000 from Charter One CD account no. 148-3-00405-0 on July 28, 2003. She also withdrew $5,500 from Charter One CD account no. 049-3-03963-8, totaling $22,550.00. The trial court disagreed with Wife's argument that Husband had gifted a portion of these monies to Wife and concluded that these monies were Husband's separate property. After factoring in a $5000 credit which the court found that Husband owed to Wife based on her testimony that she had paid off a premarital debt for him during his first divorce, the trial court found that Wife should repay Husband $17,550.00 for the monies she withdrew from both CDs.
 {¶ 5} With regards to Husband's pension, the trial court noted that he elected to have a joint and survivorship benefit. This meant Husband took a reduced monthly benefit in order to provide monthly benefits for his life and the life of Wife. A pension evaluator determined Wife's survivorship portion was valued at $210,523.48. The trial court explained that when a plan participant is married for only part of the time when the pension has accrued, and he elects a fifty percent survivorship form of benefit for his surviving spouse, this creates an issue of excess survivorship, which is the amount of the survivorship benefit funded by the participant's separate property portion of the pension. The trial court quoted the pension evaluator's report, stating, "this amount is to be considered as a preexisting payment already made to the non-participant by the participant from separate property as a result of this survivorship election." The trial court calculated the pension amounts in pre-tax dollars, then stated,
"In order to make an equitable division of all of these assets, Defendant shall receive the entire marital portion of his Police and Fire Pension. Plaintiff shall receive the full value of the survivorship portion of Defendant's pension including the excess survivorship tail. The amount Plaintiff owes Defendant-participant in the amount of $68,078.65 for her receipt of the excess survivorship tail shall be offset against the $50,389.13 of excess marital property that Defendant received."
 {¶ 6} Lastly, after detailing the property distribution and considering the spousal support factors of R.C. 3105.18, the trial court concluded that spousal support was not warranted or reasonable.
 {¶ 7} Wife appealed, asserting four assignments of error for our review.
 ASSIGNMENT OF ERROR I
"When the record contains evidence that both spouses['] marital labor, money, or in-kind contribution to a non-marital asset actually caused the appreciation in the value of the asset, the trial court abused its discretion in holding that the appreciation is separate property."
 {¶ 8} In her first assignment of error, Wife asserts that the trial court erred when it found that the appreciation in the parties' property was separate property. Specifically, Wife contends that their combined marital labor resulted in the property's appreciation, and that Husband did not meet his burden of proof in putting forth evidence that the appreciation of the property was his separate property. We agree.
 {¶ 9} "Separate property" includes that real or personal property, including money, which was acquired by one spouse prior to the marriage. R.C. 3105.171(A)(6)(a). The commingling of this separate property during marriage does not destroy its individual identity, unless the commingling is sufficiently extensive as to render the identity untraceable. R.C. 3105.171(A)(6)(b). The spouse seeking to identify, and protect, his or her own separate property bears the burden of tracing the existence of the separate property, within the otherwise commingled property.Peck v. Peck (1994), 96 Ohio App.3d 731, 734. Once traced, the separate property is to be distributed to its individual owner. R.C. 3105.171(D). Moreover, any passive appreciation of that separate property is also removed from the commingled marital property and distributed to the individual owner. R.C.3105.171(A)(6)(a)(iii).
 {¶ 10} In the case of a marital residence, passive appreciation includes the increased equity in the home due to market conditions, as opposed to active appreciation resulting from investment or labor. Ray v. Ray, 9th Dist. No. 03CA0026-M,2003-Ohio-6323, at ¶ 6. In a mixed situation, one who asserts that the appreciation of a premarital asset during the marriage is his or her separate property has the burden of proof on this issue by a preponderance of the evidence. See Polakoff v.Polakoff (Aug. 4, 2000), 11th Dist. No. 98-T-0163.
 {¶ 11} The Ohio Supreme Court reinforced that marital property, subject to R.C. 3105.171(A)(3)(b), means "all income and appreciation on separate property, due to the labor, monetary or in-kind contribution of either or both of the spouses that occurred during the marriage." (Emphasis omitted.) Middendorf v.Middendorf (1998), 82 Ohio St.3d 397, 400, quoting 144 Ohio Laws, Part I, 1754-1755. The Court found "the plain language of R.C. 3105.17(A)(3)(a)(iii) unambiguously mandates that when either spouse makes a labor, money or in-kind contribution that causes an increase in the value of separate property, that increase in value is deemed marital property." Id. (Emphasis omitted.) Therefore, when the efforts of one spouse contribute to the active appreciation of the asset, the increased value is characterized as marital property and subject to division.
 {¶ 12} In the instant case, we find that there is a complete absence of testimony from Husband regarding the issue of appreciation, both active and passive, to the Woodfield property. Although the property was bought with Husband's separate monies, Husband did not present any testimony as to how the passive and active appreciation should be sorted out, nor did he attempt to place any sort of dollar figure or percentage on what he thought constituted the passive or active appreciation on the $15,000 difference between the purchase and sale price. Husband had full knowledge of what improvements were made through the efforts of himself and Wife, and did not attempt to characterize any of the passive appreciation as his separate property. Thus, Husband failed to meet his burden of proof of tracing the separate property, the passive appreciation, to him.
 {¶ 13} Wife testified as to how their marital contributions took the house from a cinderblock foundation to a complete structure. Despite the fact that she did not know how much money was expended for the construction or outside labor, this Court finds that it was not her burden to trace the values of these. As no testimony was presented from Husband regarding the passive or active appreciation, we find that Wife's testimony was sufficient to introduce how each of them made a labor, money or in-kind contribution which caused an increase in the value of the Woodfield property. We sustain Wife's first assignment of error.
 ASSIGNMENT OF ERROR II
"The trial court abused its discretion when it determined the Charter One certificate of deposit accounts to be Husband's separate property."
 {¶ 14} In her second assignment of error, Wife contends that the trial court erred when it found that the CD accounts were Husband's separate property. Wife argues that Husband's testimony that he put the proceeds from the sale of the Woodfield property into CD accounts does not meet his burden of proof needed to trace the asset to his separate property. Wife also asserts that because the CD accounts were opened four years after the sale of the Woodfield property, there is no way to trace where the proceeds were held until the CD accounts were opened. We agree.
 {¶ 15} As we explained in our analysis of Assignment of Error I, the spouse seeking to identify, and protect, his or her own separate property bears the burden of tracing the existence of the separate property. Peck at 734. In the first assignment of error, we found that any appreciation in the Woodfield property constituted separate property for Husband. However, Husband testified that he opened the two CD accounts with monies from the sale proceeds of the Woodfield property four years after the property had been sold. Husband testified to the following:
"Q: What did you do with the $42,000? Did you owe money on the Woodfield property?
"A: No.
"Q: What did you do with the $42,000 when you received it?
"A: Put it into a C.D.
"Q: Okay.
"A.: Two C.D.'s. I don't know."
Based on his testimony, which was limited and somewhat vague, we are unable to find that Husband successfully met his burden of tracing the existence of his separate monies within the CD accounts. We conclude that Husband has failed to meet his burden, as he presented no evidence that could trace his separate property funds within the total amounts contained in the accounts. Wife's second assignment of error is sustained.
 ASSIGNMENT OF ERROR III
"Because Wife will not receive any portion of the excess survivorship benefits unless and until Husband predeceases her, the trial court abused its discretion when it offset the Wife's excess joint and survivorship benefit against the marital portion of Husband's pension."
 {¶ 16} In her third assignment of error, Wife argues that the trial court abused its discretion when it offset the value of Wife's survivorship interest in Husband's pension against her half of the marital portion of Husband pension. Wife has urged that such an offset is error because the award is speculative. We find that the trial court erred in its offset, but for different reasons.
 {¶ 17} The Court relied upon the uncontested testimony of an expert to establish the value of Wife's survivorship interest. There is no evidence in the record to support that the expert did not consider the possibility of Wife predeceasing Husband when determining the value of Wife's interest. Further, the mere fact that Wife's interest may never be realized does not undermine the fact that Wife's interest currently has some value. Wife's specific claims, therefore, lack merit.
 {¶ 18} However, in its decision, the trial court offset the entire amount of Wife's survivorship interest in its calculations. Through such an approach, the trial court effectively treated the value of the survivorship interest as Husband's separate property, thus granting him a setoff of the entire amount. That is, the trial court found that the amount of Wife's survivorship interest, $152,242.65, was effectively a gift from Husband. Having found that Wife had already received such a benefit, the trial court ordered that the full amount be deducted from her interest in the principal of Husband's pension. We find such a result to be in error.
 {¶ 19} Spouses can change separate property into marital property during the course of the marriage. Helton v. Helton
(1996), 114 Ohio App.3d 683, 685, citing Moore v. Moore (1992),83 Ohio App.3d 75, 77. "The most commonly recognized method for effecting this change is through an inter vivos gift of the property from the donor spouse to the donee spouse." (Emphasis sic.) Helton, 114 Ohio App.3d at 685.
"The essential elements of an inter vivos gift are: `(1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there and (2) in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion and control over it.' Id., at 685-686, quoting Bolles v. Toledo Trust Co. (1936),132 Ohio St. 21, paragraph one of the syllabus.
 {¶ 20} In the instant matter, Husband gave Wife a survivorship interest in his pension during the marriage. There is no question that Husband intended such a benefit to flow to Wife. Further, Husband transferred possession of the gift to the extent possible by signing the appropriate paperwork to grant the interest to Wife. Therefore, to the extent that the survivorship interest was funded by Husband's separate property, the survivorship interest itself was transformed into marital property upon the completion of Husband's gift.
 {¶ 21} By ordering Wife to offset the entire amount of the survivorship interest, the Court deprived her of any marital interest in the property. Effectively, the trial court nullified the gift Husband made to Wife, returning to Husband the full amount of the survivorship interest. As noted above, however, once gifted, Husband was no longer entitled to the full value of the survivorship interest as it was marital property subject to an equitable division. As the trial court's decision awarded Husband the full $152,242.65, despite the fact that such an amount was marital property, it abused its discretion in dividing the parties' property. This Court sustains Wife's third assignment of error.
 ASSIGNMENT OF ERROR IV
"The trial court abused its discretion when it failed to award [Appellant] spousal support."
 {¶ 22} In her fourth assignment of error, Appellant argues the trial court erred when it failed to award her spousal support. Specifically, Appellant contends that she did not receive any significant assets from the division of the marital property and, because the trial court offset the value of her excess survivorship benefit, she will not have access to this income unless and until Appellee predeceases her. We agree, but for different reasons than those asserted by Appellant.
 {¶ 23} An award of spousal support is within the broad discretion of the trial court. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 218. This Court will not reverse the trial court's decision absent an abuse of discretion. Id. Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. Id. at 219.
 {¶ 24} As we discussed in Wife's third assignment of error, we concluded the trial court erred in offsetting Wife's survivorship interest of Husband's pension. As the property division impacts the trial court's decision to award spousal support, the trial court's abuse of discretion in offsetting Wife's survivorship portion of Husband's pension leads us to conclude that the trial court must revisit its prior decision to not award Wife any spousal support. See Kaechele v. Kaechele
(1988), 35 Ohio St.3d 93, 95 (noting that property division must be properly accomplished prior to making a decision on spousal support); Young v. Young (2001), 146 Ohio App.3d 34, 37-38
(stating that when property division is reversed, the court may need to reevaluate its spousal support order on remand.) Therefore, the trial court's decision is reversed and remanded for a new order of property division and spousal support, if any.
 {¶ 25} Wife's four assignments of error are sustained. The decision of the Summit County Court of Common Pleas is reversed and the cause is remanded for further proceedings consistent with this decision.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Carr, J., Whitmore, J., concur.