[Cite as *Young v. Young*, 2011-Ohio-2347.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CHARLES R. YOUNG | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellant/ | : | Hon. John W. Wise, J. |
| Cross-Appellee | : | Hon. Julie A. Edwards, J. |
| | : | |
| -vs- | : | |
| | : | |
| RUTH E. YOUNG | : | Case No. 09AP100049 |
| | : | |
| Defendant-Appellee/ | : | |
| Cross-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common Pleas, Domestic Relations Division, Case No. 2007TM090433

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     May 13, 2011

APPEARANCES:

For Plaintiff-Appellant

PAUL HERVEY
P.O. Box 1014
New Philadelphia, OH  44663

For Defendant-Appellee

SHAWN LINDSAY
P.O. Box 992
Uhrichsville, OH  44683

*Farmer, P.J.*

{¶1} On June 27, 1986, appellant, Charles Young, and appellee, Ruth Young, were married. On October 1, 2007, appellant filed a complaint for divorce. Appellee filed an answer and counterclaim on October 15, 2007.

{¶2} A hearing commenced on November 12, 2008. At the time of the hearing, appellant was 83 years old and appellee was 62. By judgment entry filed September 29, 2009, the trial court granted the parties a divorce and divided their extensive assets and debts. In addition, the trial court ordered appellant to pay appellee $30,000.00 for attorney fees.

{¶3} Appellant filed a notice of appeal on October 5, 2009 and assigned the following errors:

I

{¶4} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO EQUALLY AND EQUITABLY DIVIDE MARITAL ASSETS, TO DETERMINE WHETHER SOME ASSETS WERE SEPARATE, AND TO ASSIGN A VALUE TO THOSE ASSETS."

II

{¶5} "THE TRIAL COURT DENIED THE APPELLANT DUE PROCESS BY FINDING HIM IN CONTEMPT WITHOUT PROPER NOTICE OF A HEARING ON THE ISSUE."

III

{¶6} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THE APPELLANT IN CONTEMPT."

IV

{¶7}   "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY FINDING FINANCIAL MISCONDUCT ON THE PART OF THE APPELLANT AND BY SANCTIONING THE APPELLANT IN AWARDING THE MARITAL RESIDENCE TO THE APPELLEE."

V

{¶8}   "THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING ATTORNEY FEES TO THE APPELLEE."

VI

{¶9}   "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO RULE ON AND IMPLICITLY OVERRULING OUTSTANDING MOTIONS FOR CONTEMPT AND FOR SANCTIONS REGARDING THE APPELLEE."

{¶10}  Appellee filed a notice of cross-appeal on October 28, 2009 and assigned the following errors:

CROSS-ASSIGNMENT OF ERROR I

{¶11} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO EQUALLY AND EQUITABLY DIVIDE MARITAL ASSETS AND DEBTS."

CROSS-ASSIGNMENT OF ERROR II

{¶12} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING CROSS-APPELLANT'S MOTION TO JOIN NECESSARY PARTIES AND TO IMPOSE A CONSTRUCTIVE TRUST ON CERTAIN PROPERTY TRANSFERRED BY CROSS-APPELLEE."

CROSS-ASSIGNMENT OF ERROR III

{¶13} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN MAKING THE DISTRIBUTIVE AWARD TO THE CROSS-APPELLANT BASED UPON ITS FINDING THAT CROSS-APPELLEE ENGAGED IN FINANCIAL MISCONDUCT."

CROSS-ASSIGNMENT OF ERROR IV

{¶14} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DETERMINING THE AMOUNT OF SPOUSAL SUPPORT OWED BY CROSS-APPELLEE TO THE CROSS-APPELLANT."

CROSS-ASSIGNMENT OF ERROR V

{¶15} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS DECISION TO ONLY AWARD PARTIAL ATTORNEY FEES TO CROSS-APPELLANT."

{¶16} This matter is now before this court for consideration.

ASSIGNMENT OF ERROR I, CROSS-ASSIGNMENT OF ERROR I

{¶17} Both parties argue the distributive award was not an equal or equitable division of the marital assets and debts.

{¶18} The trial court is provided with broad discretion in deciding what is equitable upon the facts and circumstances of each case. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. *Holcomb. v. Holcomb* (1989), 44 Ohio St.3d 128. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217.

{¶19} We note the trial court filed an extensive and thorough judgment entry on all the issues, and awarded an unequal distribution based upon appellant's financial misconduct. The financial misconduct found by the trial court was set forth in Findings of Fact Nos. 102-110.

{¶20} First, appellant argues the trial court erred in permitting appellee to remain as the survivorship beneficiary on his OPERS pension plan. We note the trial court did not award spousal support. We can readily correlate these two decisions (see Cross-Assignment of Error IV). We therefore conclude that given the well reasoned opinion in *Salmon v. Salmon,* Summit App. No. 22745, 2006-Ohio-1557, ¶20, the award was appropriate:

{¶21} "In the instant matter, Husband gave Wife a survivorship interest in his pension during the marriage. There is no question that Husband intended such a benefit to flow to Wife. Further, Husband transferred possession of the gift to the extent possible by signing the appropriate paperwork to grant the interest to Wife. Therefore, to the extent that the survivorship interest was funded by Husband's separate property, the survivorship interest itself was transformed into marital property upon the completion of Husband's gift."

{¶22} We conclude this issue was not a distributive award of marital assets.

{¶23} Next, appellant argues the trial court erred in finding his strip-mining company, Surface Mining, Inc. (hereinafter "SMI"), was a marital asset:

{¶24} "Based upon the fluctuation in the value of the assets over the years, the contribution of both parties and commingling of their funds with SMI, any pre-marital value of the corporation is no longer traceable. The stock in the corporation is now

marital due to the labor and monetary contributions of both parties during the marriage." Judgment Entry filed September 29, 2009 at Findings of Fact No. 31.

{¶25} During his career, appellant was Tuscarawas County Engineer, two terms in the sixties and two terms in the eighties. T. at 72. While appellant was county engineer, he did not work at his SMI business. T. at 72-76. After the marriage, SMI's worth varied from $129,824.00 in 1986 to $40,187.00 in 2004. T. at 96, 183-184. Included as an SMI asset was a loan in the amount of $166,000.00 by appellant to his grandson to purchase a convenience store. T. at 202-207. Although the loan was on the SMI books, no collateral was given for the loan. The marriage was of twenty years. The bulk of SMI's income/assets were acquired during this twenty year period.

{¶26} Although the trial court valued the SMI marital asset at $200,000.00, and awarded appellee $100,000.00, there was little definitive proof of its actual value presented by either side. Although both parties protest about the valuation of SMI, neither provided any expert testimony as to its value. We find the trial court properly reviewed the tax returns of SMI and averaged its appropriate value. Appellee's argument relative to SMI's mineral values based on an expired contract with another company is of no consequence and any attempt to give it value without expert testimony would be speculative.

{¶27} Appellant also makes a specious argument regarding real property transfers and loans made to his sons and others, arguing the trial court erred in deeming them to be marital assets. Appellant's Brief at 21-22. The properties in question include a portion of the Uhrichsville property with loan to son James and the Goshen/York properties to sons James and Jeff. The trial court did not award appellee

a share of these properties, but considered the transfers in light of financial misconduct. Findings of Fact Nos. 45, 64, 65, 68, 105, 106.

{¶28} The Uhrichsville property appellant transferred to his son James some ten months prior to filing the divorce complaint was part of the marital residence property which was originally premarital, belonging to appellant. Findings of Fact Nos. 41 and 45. This transfer involved a loan from appellant to James to pay for the property, with an amount due of $90,200.00, although appellant released the mortgage for this debt in April of 2007. Findings of Fact Nos. 45 and 106. The trial court did not make a distributive award of this property as it was owned by James, but merely assigned the ability to collect on the loan to appellant.

{¶29} As for the Goshen/York properties, the Goshen property was appellant's premarital acquisition and the York property was a marital acquisition. Findings of Fact Nos. 62 and 63. Some nine months prior to the filing of the divorce complaint, appellant transferred the properties to his sons James and Jeff. Findings of Fact No. 64. The trial court found appellant "coerced" appellee's signature on the deeds, "misrepresenting to Ruth that the real estate was premarital." Findings of Fact No. 65. The trial court also found there was no evidence of the sons paying any monies to appellant for the transfer, and no evidence that the transfer was a gift. Findings of Fact No. 68. Appellee's expert appraised the property at $384,000.00. T. at 536. The trial court found the value of the marital portion to be $195,840.00, but could not make a distributive award of the property as it was owned by James and Jeff. We note appellee's argument about mineral value in the properties is meritless for the reason stated supra.

{¶30} Appellant was also "awarded" the amounts of three loans: one to SMI for his grandson's purchase of the convenience store ($166,000.00), one to his son Scott ($106,096.00), and one to Russ Mulgrew ($161,000.00). Judgment Entry filed September 29, 2009 at pages 45-46. Appellant argues these were legitimate loans and valued on their face. In fact, there was concrete evidence that the Mulgrew loan was an effort by appellant to get "rid" of money. T. at 113. The trial court merely assigned the ability to collect on the loans to appellant. Given appellant's generosity in the face of Ohio's marital property law, he is left with the consequences of his own actions.

{¶31} Appellee argues the trial court should have awarded her a larger share of the outstanding loan on the Clendening lake property because of appellant's financial misconduct. Appellee purchased the property and entered into a land contract with three individuals. Findings of Fact Nos. 47-49. Thereafter, appellant and appellee deeded the property to the individuals five months prior to the filing of the divorce complaint, and appellant stopped accepting payments on the land contract eight months after the divorce complaint was filed even though $22,500.00 remained due and owing. Findings of Fact Nos. 51-52, 55. The trial court divided the outstanding loan equally between the parties, and ordered appellant to pay appellee $11,250.00 for her share. Given the fact that the trial court awarded appellee a further distributive award for appellant's financial misconduct, we cannot find the award on the Clendening lake property was unfair.

{¶32} In Findings of Fact No. 109, under "Financial Misconduct," the trial court found, "In September 2007, Charles removed his name from a bank account with

$76,693.27 on deposit, leaving the balance in the names of his son and nephew. These funds were marital assets." See also, Findings of Facts Nos. 88-91.

{¶33} The trial court awarded appellee the entire marital residence as an extra distributive award due to appellant's financial misconduct, $75,000.00 being appellant's share. This amount offsets the amount in the bank account which were marital funds that appellant chose to give to his son and nephew. In reviewing the distribution of assets, the parties are equal on the pensions, SMI, and the Clendening lake property. Appellee was awarded her annuity ($223.04) and the Zanesville property which is not in dispute ($34,604.00), and appellant was awarded the amounts in his bank accounts ($4,525.00). Appellant was also awarded the ability to collect on outstanding loans worth $523,296.00. The distributive award, with the inclusion of $75,000.00 awarded to appellee for appellant's financial misconduct, minus the outstanding loans, becomes very close to being equal and is clearly equitable, $465,633.76 for appellee versus $285,332.38.00 for appellant. The over $180,301.38 difference can be attributable to appellant's financial misconduct involving the Goshen/York properties that had a marital value of $195,840.00.

{¶34} We conclude the trial court, in an effort to unravel the maze of transactions created by appellant's attempt to beat the divorce system, was equitable.

{¶35} Assignment of Error I and Cross-Assignment of Error I are denied.

ASSIGNMENTS OF ERROR II, III, VI

{¶36} Both parties conceded at oral argument that the issues relative to the contempt finding are moot.

ASSIGNMENT OF ERROR IV, CROSS-ASSIGNMENT OF ERROR III

{¶37} Appellant claims the trial court erred in awarding the marital residence to appellee as a sanction for financial misconduct. Appellee claims the award for financial misconduct was not enough. We disagree.

{¶38} In its judgment entry filed September 29, 2009 under "Financial Misconduct" at pages 47-48, the trial court found financial misconduct based upon appellant's intentional interference with appellee's property rights:

{¶39} "Although Plaintiff's counsel argues Charles was 'estate planning,' the evidence, including the testimony of Charles and his accountant, fails to support this argument. The evidence is clear that Charles intentionally interfered with Ruth's property rights and intentionally defeated her distribution of assets.

{¶40} "The Court has provided for a distributive award for the marital shares of SMI and the Clendening property debt, which were part of Charles' actions constituting financial misconduct.

{¶41} "The Court has determined a further distributive award is appropriate due to Charles' financial misconduct. Based upon the findings herein relating to Charles' financial misconduct, the Court has also awarded the marital residence to Ruth, as set forth above. The considerations regarding Charles' financial misconduct have further been considered by the Court in addressing the issue of attorneys' fees, below."

{¶42} As stated supra, the financial misconduct found by the trial court was set forth in Findings of Fact Nos. 102-110. The marital residence was valued at $150,000.00, with appellant's share being $75,000.00. Findings of Fact No. 44.

{¶43} Appellant's actions are numerous. Appellant relinquished the deed to the Clendening lake property and despite an outstanding debt on the property, refused payment. T. at 564-565. Appellant transferred the Goshen/York property to his sons without any consideration or payments, and did not file a gift tax return on the transaction. Appellee testified she was pressured by appellant to sign over certain properties, and appellant informed her that she had a dower interest only. T. at 634-635. Appellant attempted to transfer his interest in SMI when in fact tax returns identified him as the 100% owner until just before the divorce. T. at 110, 183-184, 192, 196-198. Included in the SMI assets was the convenience store loan which was from appellant, not the corporation. T. at 113-114, 569-570. Appellant removed his name from a bank account containing over $76,000.00 which the trial court found to be marital funds.

{¶44} As testified to by appellee, after appellant's health problems and his visit to his son Ron in Hawaii in 2005, his attitude totally changed. T. at 636-637. The trial court viewed appellant's actions as not good estate planning, but part of a scheme to diminish his assets prior to filing for divorce.

{¶45} From our view, the trial court's decision is well founded by the evidence. Separate and apart from appellee's own testimony are incidents that lead one to only one conclusion. Appellant's forgiving of debts to third parties and unsubstantiated "gifts" to his sons, accompanied by unsecured and uncollected debt, belie his claim of innocent estate planning. The conclusion that appellee's version was more credible or believable than appellant's is well substantiated in the record.

{¶46} Appellee claims the extra $75,000.00 distributive award for appellant's financial misconduct was inadequate. We disagree. A $75,000.00 extra distributive award is not de minimus and was equal to the bank account amount that appellant "gave away." The trial court accounted for the Clendening lake property and SMI, and appellee's distributive award was more than appellant's as discussed supra. Furthermore, the trial court considered appellant's financial misconduct in considering attorney's fees as discussed infra.

{¶47} Assignment of Error IV and Cross-Assignment of Error III are denied.

ASSIGNMENT OF ERROR V, CROSS-ASSIGNMENT OF ERROR V

{¶48} Both parties claim the trial court erred in its decision on attorney fees. We disagree.

{¶49} R.C. 3105.73 governs award of attorney fees and litigation expenses. Subsection (A) states the following:

{¶50} "In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."

{¶51} An award of attorney fees lies within the trial court's sound discretion. *Huffer v. Huffer,* Franklin App. No. 09AP-574, 2010-Ohio-1223; *Blakemore,* supra.

{¶52} In its judgment entry filed September 29, 2009 under "Attorneys' Fees" at page 48, the trial court ordered the following with respect to attorney fees:

{¶53} "The Court has considered the case law, above, and specifically the provisions of R.C. 3105.73 in determining the payment of attorneys' fees. Specifically, the Court has considered whether the award of attorney fees to either party would be equitable, and the Court further considered the parties' marital assets and income, the conduct of the parties throughout the divorce and the other relevant factors, such as the financial misconduct of Charles.

{¶54} "Based upon the foregoing, it is ORDERED that Charles shall be responsible for the payment of his own attorney's fees. In addition, Charles shall pay to Ruth $30,000.00 of the attorney fees due for her attorney's fees, and said payment shall be made within 90 days of the date of this order

{¶55} "It is ORDERED that Ruth shall be responsible for the payment of the remaining balance of her own attorney's fees."

{¶56} Two conflicting opinions were given on the attorney's fees issue. Appellee's witness testified appellee's attorney's fees were high but reasonable given the amount of discovery, the length of the depositions, and the concealment of assets. T. at 592-595. Appellee's witness opined the "discovery process in this case basically failed." T. at 593. Appellant's witness testified the fees were too high and he was "shocked" by the number ($92,040.50). T. at 492-493. Appellant's witness opined that one-third of every divorce case includes discovery issues which "were definitely extensive in this case." T. at 490. From the trial court's decision, it is clear that the trial court accepted this one-third amount and awarded appellee one-third of her fees.

{¶57} Given the twenty year marriage, the distributive award, appellant's conduct, and the relative equal income of the parties presently, we find the trial court's decision was based upon the evidence. We do not find an abuse of discretion.

{¶58} Assignment of Error V and Cross-Assignment of Error V are denied.

### CROSS-ASSIGNMENT OF ERROR II

{¶59} Appellee claims the trial court erred in failing to impose a constructive trust over the improperly transferred assets. We disagree.

{¶60} As we noted in Assignment of Error I and Cross-Assignment of Error I, the trial court created an equitable award by giving appellant the ability to collect on his outstanding loans, but negating them from the division of assets. We find this was an attempt to provide finality to the proceedings. The trial court sanctioned appellant for his purposeful acts to diminish the estate by awarding appellee an extra $75,000.00 distributive award of the marital residence and a higher overall distribution of assets.

{¶61} We find the trial court created a method of resolution that was equitable and addressed the need for finality.

{¶62} Cross-Assignment of Error II is denied.

### CROSS-ASSIGNMENT OF ERROR IV

{¶63} Appellee claims the trial court erred in failing to award spousal support. We disagree.

{¶64} R.C. 3105.18 governs awards of spousal support and modification and states as follows:

{¶65} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration

of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

{¶66}  "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;

{¶67}  "(b) The relative earning abilities of the parties;

{¶68}  "(c) The ages and the physical, mental and emotional conditions of the parties;

{¶69}  "(d) The retirement benefits of the parties;

{¶70}  "(e) The duration of the marriage;

{¶71}  "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

{¶72}  "(g) The standard of living of the parties established during the marriage;

{¶73}  "(h) The relative extent of education of the parties;

{¶74}  "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

{¶75}  "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

{¶76}  "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience, and employment, is in fact, sought;

{¶77} "(l) The tax consequences, for each party, of an award of spousal support;

{¶78} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

{¶79} "(n) Any other factors that the court expressly finds to be relevant and equitable."

{¶80} Both parties were receiving pension funds in pay-out. Appellee was permitted to keep her excess survivorship interest in appellant's pension (valued at $237,433.00). Appellee presently substitute teaches two days a week, and had a taxable income of $6,532.00 in 2006, $6,271.00 in 2007, and $7,489.00 in 2008 up to the month of November. T. at 7. Her pension amount was $3,000.00 per month. T. at 124-125. Appellant was also assigned appellee's credit card debt which rose during the pendency of the case. Given the relative age disparity of the parties (21 years) and the fact that appellee will continue to receive the survivor benefit after appellant's demise, we find there was no abuse of discretion by the trial court in denying spousal support to appellee.

{¶81} Cross-Assignment of Error IV is denied.

{¶82} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Domestic Relations Division is hereby affirmed.

By Farmer, P.J.

Wise, J. and

Edwards, J. concur.


_s/ Sheila G. Farmer_____


_s/ John W. Wise_____


_s/ Julie A. Edwards_____

JUDGES

SGF/sg 218

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT


CHARLES R. YOUNG                          :
                                          :
    Plaintiff-Appellant/              :
    Cross-Appellee                    :
                                          :
-vs-                                      :          JUDGMENT ENTRY
                                          :
RUTH E. YOUNG                             :
                                          :
    Defendant-Appellee/               :
    Cross-Appellant                   :          CASE NO. 09AP100049


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Domestic Relations Division is affirmed.   Costs to be divided equally between appellant and appellee.


_s/ Sheila G. Farmer_____


_s/ John W. Wise_____


_s/ Julie A. Edwards_____

JUDGES