[Cite as *Swick v. Swick*, 2020-Ohio-6884.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

| MICHAEL SWICK | | C.A. No. 20AP0009 |
| | | |
| Appellant | | |
| | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| | | |
| PATRICIA SWICK | | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| | | |
| Appellee | | CASE No. 2018 DR-B 000320 |

DECISION AND JOURNAL ENTRY

Dated: December 28, 2020

CARR, Judge.

{¶1} Appellant Michael Swick ("Husband") appeals from the judgment of the Wayne County Court of Common Pleas, Domestic Relations Division. This Court reverses and remands the matter to the trial court for further consideration consistent with this decision.

I.

{¶2} This appeal is focused on the allocation of a residence that Husband purchased in 1996 for $119,000.00, prior to his marriage to Patricia Swick ("Wife") on January 8, 2010. At the time Husband refinanced the home in 2003, it was appraised at $175,000. In May 2009, Husband opened a home equity line of credit using his residence as collateral for the purpose of buying a house on Diane Street to rent/flip with Wife.

{¶3} As of January 4, 2010, the balance on Husband's loan for his residence was $57,914.51. That house became the parties' marital residence ("Marital Residence"). During the course of the marriage, Husband and Wife formed MNU, LLC for the purpose of buying, renting,

and flipping homes. Several homes were purchased over the parties' marriage. In 2010, the parties sold the Diane Street house and deposited the money into the business to purchase additional properties and pay down the home equity line of credit, a process they continued with other homes.

{¶4} In 2013, the parties paid off the remaining mortgage on the Marital Residence with $36,049.49 of Wife's separate property in order to obtain a larger home equity line of credit; the original home equity line of credit was closed at that time. An appraisal was also conducted at the time, but the record does not contain the appraised value, only the average value of comparable homes.

{¶5} In 2016, a large shed was constructed on the property of the Marital Residence. There was testimony that the shed was funded from proceeds from an insurance claim from a wrecked vehicle; the testimony further evidenced that that vehicle had been purchased from funds from a separate property interest from Wife. However, the trial court ultimately concluded that Wife failed to adequately trace her separate property to the construction of the shed. In 2017, for estate planning purposes, Wife's name was added to the deed. The parties began living separate and apart in February 2018 and paid off the home equity line of credit in July 2018.

{¶6} In October 2018, Husband filed a complaint for divorce. Around that time, the Martial Residence was appraised at $175,000.00. The matter proceeded to a hearing before a magistrate. Prior to trial, the record reflects that the parties entered into joint stipulations covering certain items; however, those stipulations are not in the record. Nonetheless, the record is clear that the stipulations did not cover the value or allocation of the Marital Residence.

{¶7} Following the hearing, in November 2019, the magistrate issued a decision. That same day, the trial court issued a judgment entry which appears to mirror the magistrate's decision. With respect to the Marital Residence, the magistrate and trial court concluded that no evidence

was presented to show the equity in the Marital Residence at the time of the parties' marriage, and, thus, the court could not determine Husband's separate property interest in the Marital Residence. The magistrate and trial court also concluded that Wife had demonstrated that she had a $36,049.49 separate property interest in the Martial Residence. In addition, the magistrate and trial court determined that the Martial Residence and any appreciation was marital property. The magistrate and trial court concluded that the Marital Residence should be sold, and that after Wife's $36,049.49 separate property interest was deducted from the proceeds, the remainder of the proceeds and liabilities should be divided equally.

{¶8} Husband filed objections to the magistrate's decision. His objections included that the magistrate erred in finding that there was no evidence to show the equity in the Marital Residence at the time of the marriage, erred in concluding that Husband had no separate property interest in the Marital Residence, erred in concluding the Marital Residence was martial property, and erred in not allowing Husband to retain the Marital Residence and pay off Wife's share in the property. The trial court overruled Husband's objections. Husband has appealed, raising a single assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT'S DECISION DENYING APPELLANT/HUSBAND, MICHAEL SWICK, HIS SEPARATE PROPERTY INTEREST IN THE MORELAND ROAD HOME AND NOT ALLOWING HUSBAND TO RETAIN THE MORELAND ROAD HOME AND FINANCE PAYING OFF APPELLEE/WIFE'S SEPARATE PROPERTY INTEREST IN THE MORELAND HOME PLUS WIFE'S ONE-HALF INTEREST IN THE REMAINING MARITAL EQUITY IN THE MORELAND HOME WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

**{¶9}** Husband argues in his sole assignment of error that the trial court erred in failing to grant him a separate property interest in the Marital Residence and in ordering it sold. In addition, Husband argues that the trial court failed to value the Marital Residence.

**{¶10}** R.C. 3105.171 governs the division of marital and separate property and provides relevant definitions concerning the same. It provides that, "[i]n divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. * * * [U]pon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." R.C. 3105.171(B). "Except as otherwise provided in division (E) of this section or by another provision of this section, the court shall disburse a spouse's separate property to that spouse. If a court does not disburse a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse." R.C. 3105.171(D). "Except as otherwise provided in this section, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." R.C. 3105.171(H). "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b).

> "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:
>
> (i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
>
> (ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;

(iv) A participant account, as defined in section 148.01 of the Revised Code, of either of the spouses, to the extent of the following: the moneys that have been deferred by a continuing member or participating employee, as defined in that section, and that have been transmitted to the Ohio public employees deferred compensation board during the marriage and any income that is derived from the investment of those moneys during the marriage; the moneys that have been deferred by an officer or employee of a municipal corporation and that have been transmitted to the governing board, administrator, depository, or trustee of the deferred compensation program of the municipal corporation during the marriage and any income that is derived from the investment of those moneys during the marriage; or the moneys that have been deferred by an officer or employee of a government unit, as defined in section 148.06 of the Revised Code, and that have been transmitted to the governing board, as defined in that section, during the marriage and any income that is derived from the investment of those moneys during the marriage.

R.C. 3105.171(A)(3)(a).

{¶11} Marital property does not include separate property, R.C. 3105.171(A)(3)(b), which

is defined as:

all real and personal property and any interest in real or personal property that is found by the court to be any of the following:

(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;

(iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;

(v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;

(vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;

(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

R.C. 3105.171(A)(6)(a). "'Passive income' means income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4).

{¶12} Here, the record demonstrates that Husband purchased the Martial Residence in 1996 for $119,000.00, years before he married Wife in January 2010. In fact, Husband solely owned the property for longer than the parties were married. Thus, on its face, it would appear Husband has a separate property interest in the Martial Residence. *See* R.C. 3105.171(A)(3)(b)(ii). While there was no appraisal conducted at the time of the marriage in 2010, and the appraised value from the 2013 appraisal is not in the record, we cannot agree that that leads to the conclusion that the equity in the Marital Residence could not be established. The record does contain two appraisals on the property: one from 2003, before the marriage, for $175,000.00 and another from 2018 for $175,000.00. While the trial court did not expressly state it was setting a value for the Marital Residence, the trial court did specifically state that Wife failed to provide any expert appraisal of the property and Husband submitted an appraisal from 2018 for $175,000.00. Thus, it appears that the trial court did adopt Husband's 2018 appraisal value of $175,000.00.

{¶13} In addition, the record contains evidence that, on January 4, 2010, the balance on Husband's loan for the Marital Residence was $57,914.51. The trial court appears to have found it significant that it was unclear how much Husband financed when he purchased the Marital Residence and that it was unclear what the initial principal balance was. However, this Court fails to see why that information would be necessary to determining the equity in the residence when the purchase price was established, the balance on the loan was also established, and there was nothing in the record that suggested the value of the Martial Residence fluctuated from 2003

through 2018. While the trial court also indicated that the balance of the loan included amounts escrowed for taxes, a review of that document does not support the trial court's finding. Accordingly, the amount of equity in the Martial Residence at the time of the marriage could be determined from the record before the trial court.

{¶14} The foregoing information also leads to the conclusion that there was no appreciation during the marriage. While the trial court concluded that the grading and the addition of the shed and smoker to the Martial Residence in 2016 resulted in martial appreciation because both parties contributed money to it, there is no evidence in the record that supports there was any appreciation after the parties' married. In other words, there was no evidence that the value of the Martial Residence increased due to those additions. In fact, the appraisal in 2018 was exactly the same as the premarital 2003 appraisal.

{¶15} Nonetheless, to the extent the $57,914.51 balance of the loan was paid off during the marriage with marital funds it represents martial property. *See Ray v. Ray*, 9th Dist. Medina No. 03CA0026-M, 2003-Ohio-6323, ¶ 8. ("Any reduction in the amount of the first and second mortgages during the marriage by payment of marital funds would be marital property.") (Internal quotations and citation omitted.). Notwithstanding the foregoing, this "commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "The spouse seeking to identify, and protect, his or her own separate property bears the burden of tracing the existence of the separate property, within the otherwise commingled property." *Salmon v. Salmon*, 9th Dist. Summit No. 22745, 2006-Ohio-1557, ¶ 9.

{¶16} The trial court seemed to conclude that the Martial Residence was martial property due to the use of the Martial Residence as collateral for the home equity line of credit. The initial

home equity line of credit was opened in 2009, prior to the marriage; thus, it was Husband's separate property interest that acted as the collateral. In a similar circumstance, the Eighth District noted that, "the commingling of separate property with other property does not, on its own, destroy the nature of the separate property. Instead, the question of whether the separate property is traceable is of paramount concern." *Ockunzzi v. Ockunzzi*, 8th Dist. Cuyahoga No. 86785, 2006-Ohio-5741, ¶ 22. The *Ockunzzi* court then concluded that the appellant "introduced evidence of his premarital equity in the residence. Although this equity was borrowed against and the home was refinanced, these actions did not cause [appellant's] separate interest to become untraceable." *Id.* The court therefore concluded that the trial court erred in concluding the premarital equity became marital. *Id.* at ¶ 23. We conclude that the same logic is applicable here. Husband's separate property interest was not destroyed by using a portion of that interest as collateral for a home equity loan that was used during the marriage.

{¶17} To the extent Wife has argued in her brief that the trial court concluded that Husband transformed the Martial Residence from his separate property into marital property by the transfer of the deed to both of their names in 2017, we read nothing in the trial court's analysis that indicates that the trial court made such a determination. Thus, we conclude that Wife's argument is without merit.

{¶18} Accordingly, the trial court erred in concluding that Husband's equity interest in the Martial Residence could not be determined. Husband has a separate property interest in the Marital Residence that is capable of being determined from the record before this Court. There is also a martial interest in the Marital Residence. Further, because the trial court found that Wife demonstrated a $36,049.49 separate property interest in the Marital Residence due to separate

property she used to pay off the mortgage balance in 2013, that interest also must be taken into account in allocating the parties' interests in the Martial Residence.

{¶19} Finally, it appears that the trial court ordered the Martial Residence sold, at least in part, because it determined that Husband did not have a separate property interest in it. As that conclusion was incorrect, the trial court should reconsider that determination upon remand, taking into account the language in R.C. 3105.171(D), namely that, generally, "the court shall disburse a spouse's separate property to that spouse."

{¶20} Husband's assignment of error is sustained, and this matter is remanded to the trial court to reevaluate the allocation of the Martial Residence.

III.

{¶21} Husband's assignment of error is sustained. The judgment of the Wayne County Court of Common Pleas, Domestic Relations Division, is reversed, and the matter is remanded for further consideration.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

TODD E. CHEEK, Attorney at Law, for Appellant.

RACHEL HOFFEE, Attorney at Law, for Appellee.